IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TAUNEE SMITH, | ) | CASE NO. 1:14CV1702 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| ALAN LAZAROFF, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Taunee Smith ("Petitioner" or "Smith") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Smith is detained at the Mansfield Correctional Institution, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of one count of murder, two counts of aggravated burglary, and one count of kidnapping; the trial court thereafter found Smith guilty of repeat violent offender specifications, prior conviction specifications, and having weapons under a disability.  Doc. 11-1, p. 54.[1]  *State v. Smith*, No. CR-11-557838-A (Cuyahoga Cty. Common Pleas Ct. filed March 30, 2012).  The trial court sentenced Smith to fifteen years to life in prison for murder, merged the aggravated burglary counts and sentenced Smith to ten years for that count, ten years for kidnapping, and three years for having a weapon under a disability, the terms to be served consecutively for an aggregate prison sentence of thirty-five years to life.  Doc. 11-1, p. 56.

On August 8, 2014, Smith filed his petition for writ of habeas corpus setting forth two grounds for relief.  Doc. 1, pp. 6, 8. Respondent filed a Return of Writ (Doc. 11); Smith did not file a Traverse.  This matter has been referred to the undersigned Magistrate Judge for a Report

---
[1] Doc. page citations are to ECF Doc. page numbers.

and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, both of Smith's grounds are procedurally defaulted.  Thus, the undersigned recommends that Smith's Petition for a Writ of Habeas Corpus (Doc. 1) be **DISMISSED**.

## I.  Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008), *cert. denied*, 129 S. Ct. 2878 (2009).  The Cuyahoga County Court of Appeals, Eighth Appellate District of Ohio, set forth the facts underlying Smith's conviction as follows:[2]

> {¶ 6} On August 29, 2011, around 10:30 in the evening, DeJohn Dammons was shot dead with a .40–caliber gun in the driveway of his home on Breckenridge Road in Euclid. At the time of the shooting, DeJohn's fiancée, Ebony Johnson, was inside their home, along with her two daughters, Faith Smedley and Deasia Dammons.
>
> {¶ 7} According to Ebony, she was in her bedroom when she heard a "loud banging" on her front door. She went to the front door and discovered "someone" banging a gun on the door window and ordering her to open the door. She immediately ran upstairs and called 911. Then, her front door was "kicked in." The perpetrator ran upstairs, grabbed the phone from her, and pushed her into her children's room and turned on the light, all the while holding a gun to her face and ultimately striking her in the eye with the gun. Ebony further testified that, after the person left, she heard a gunshot and found DeJohn lying face down in the driveway.
>
> {¶ 8} Euclid police officer Donald Ivory testified that he responded to a 911 hang up from the Breckenridge Road residence. While en route, he learned that there was a followup call regarding a shooting within one to two minutes after the hang-up call. Officer Ivory spoke with Ebony at the scene who provided a description of the suspect as a "dark-skinned black male, approximately five feet, eight inches."
>
> {¶ 9} At trial, Ebony denied that she described the suspect as dark skinned and instead stated that the suspect was "brown skinned." She further identified Smith as the individual who charged into her home. She acknowledged that she had identified another

---

[2] The facts are taken from the Eighth District Court of Appeals' decision *State v. Smith,* 2013WL 658161 (Oh. Ct. App. Feb 21, 2013). Smith has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey,* 540 F. 3d at 397.

2

person the night of the shooting but that she was never 100 percent certain. Ebony further acknowledged that the first time she identified Smith was after seeing his booking picture in connection with a news story identifying him as being charged in connection with DeJohn's homicide. According to Ebony, her daughter first saw the news story while at her grandmother's house and told her grandmother that was the person that she saw in her bedroom the night of the shooting. Ebony looked up the news story on the Internet and saw Smith's booking photo.

{¶ 10} The state presented the testimony of several witnesses, including all of the codefendants, as well as Chrishawn Slade, as to the events leading up to the fatal shooting. Through the testimony of DeJohn's younger brother, Taylor Dammons, the state established that Taylor set the events in motion leading to the homicide of his brother.

{¶ 11} Approximately six weeks before the shooting, Taylor had been fired from DeJohn's restaurant after money was missing from the cash register. Taylor, who was bitter over being fired and the fact that money was withdrawn from his last paycheck, testified that he orchestrated a plan to rob DeJohn. The plan required a "group" with "pistols" to ambush DeJohn outside his house when he returned home from work at night, taking any cash that DeJohn had and going inside the house.

{¶ 12} The state established that DeJohn was a large, muscular man who regularly boxed. Despite DeJohn's size, Taylor testified that DeJohn would turn over the money if confronted by a group with pistols. According to Taylor, DeJohn did not carry a gun.

{¶ 13} Taylor testified that he, along with some friends, drove to DeJohn's house on three occasions prior to August 29th—the first time simply as a dry run. Taylor intended to send his friends to confront DeJohn and execute the plan at the house while he waited in another vehicle. On subsequent occasions, the plan was not executed because of "bad timing" or people being around outside. Taylor identified Chrishawn Slade and Leonte Cromity as both his friends and participants in the earlier attempts.

{¶ 14} On the night of the shooting, while Taylor was home, he received a text from Slade, stating, "I got you." Later that evening, around midnight, Taylor received a call from Slade, who was using Cromity's cell phone. According to Taylor, Slade told him that "the robbery didn't go well, DeJohn was shot, and that he lost his phone there."

{¶ 15} Euclid police detective Daniel Novitski testified as to the extensive investigation that led to the initial arrest of Slade, followed by the other codefendants: first, Cromity; second, Taylor; then William Lee; and lastly, Smith. Det. Novitski testified that the police recovered photos from the cell phone discovered at the scene and that Ebony identified one of the photos as a possible match to the perpetrator who charged into her house. The police later determined that the photo was a match for Slade.

{¶ 16} A few days later, Det. Novitski interviewed Slade, following Slade's arrest by Cleveland police in connection with a raid on a house. Slade initially denied any

3

involvement in DeJohn's death, claiming that his cell phone had been stolen. Slade told the police that he had spent that night at the Quality Inn with his friend, "Tay."

{¶ 17} The police investigated Slade's alibi, obtaining a video showing Slade and Leonte Cromity arriving together at the Quality Inn approximately an hour after the shooting. Upon being interviewed, Cromity denied being with Slade on the night of the shooting. He immediately recanted after being shown the video but claimed he "forgot." The police later obtained Cromity's cell phone records that linked his phone to the area of DeJohn's residence at the time of the homicide. Faced with this information, Cromity admitted to police that he was with Slade, putting himself at the scene as the "get-away" driver. Cromity further informed the police of the conversation between Slade and Taylor following the shooting and that two other males were involved—friends of Slade. Det. Novitski testified that Cromity led them to a house on Noble Road where he believed one of the males lived. The police later obtained an electric bill in Smith's name that connected him to the residence on Noble Road.

{¶ 18} During the course of the police investigation of DeJohn's homicide, Cromity and another individual were apprehended in the course of a burglary in Euclid. The police recovered two firearms from the arrest.

{¶ 19} Det. Novitski further testified that, based on the information obtained from Cromity, the police brought Taylor back into the station for further questioning. Taylor also consented to a search of his cell phone where police recovered the text from Slade to Taylor on the night of the shooting. Taylor ultimately admitted to his involvement.

{¶ 20} Following the retrieval of the text and the information obtained from Taylor, the police obtained an arrest warrant for Slade. Shortly following Slade's arrest, the police obtained an arrest warrant for Taylor and Cromity.

{¶ 21} According to Det. Novitski, Cromity ultimately led the police to the identity of William Lee (nickname "Work") after Cromity ran into Lee while they were both incarcerated. On September 3, 2011, the Cleveland police arrested Lee after he fled from a car being driven by Smith. Lee was carrying a 9 mm pistol and was charged with having a weapon while under disability. Det. Novitski testified that they determined from Cromity's telephone records that a few texts were sent back and forth between Cromity and Lee on the night of the shooting, including a text asking Lee if "he was still coming."

{¶ 22} Det. Novitski interviewed Lee and questioned him regarding his involvement in the homicide. According to Det. Novitski, Lee initially denied any involvement but, within five minutes, Lee ultimately admitted to being involved and stated that "he was just brought in as an extra body." Det. Novitski further testified that, during the course of his interview, he asked Lee about the name of the fourth individual identified by Slade as "T." Lee claimed that he did not know "T's" real name but that he had a picture of him on his Facebook account. Through Lee's sister, the police obtained access to Lee's Facebook account and the photos. Police subsequently presented the Facebook photos to Slade, who identified Smith as "T." The other codefendants, Cromity and Lee, also positively

identified Smith in a photo array presented by police as the fourth person there on the night of the shooting.

{¶ 23} Thereafter, police obtained an arrest warrant for Smith—the final codefendant arrested in connection with the homicide, and the only one to deny involvement. All of the codefendants agreed to a plea agreement that included a dismissal of some of the counts and the potential for less prison time provided that they cooperated at Smith's trial.

{¶ 24} Slade, Cromity, and Lee all testified at trial and identified Smith as the fourth person who accompanied them the night of the shooting. Although all three accounts varied as to exact details of the evening, including who entered the house and who shot DeJohn, the three consistently testified that Smith left the car and accompanied Slade and Lee to confront DeJohn. Slade also testified that he got $2,000 from DeJohn.

{¶ 25} The state also offered the testimony of FBI agent Timothy Kolonick, who testified that he "came into contact with a written letter that was sent by Smith to Gregory Craig." Agent Kolonick subsequently met with Craig, confronted him with a copy of the letter written by Smith, and had him initial each page. The state called Craig to testify at trial. According to Craig, he is Smith's friend and has known him all his life. The letter asked Craig to notify police and tell them that Smith was with him on August 29 at Lakeshore Cocktails all night. Craig testified, however, that he has never been to Lakeshore Cocktails and that he burned the letter after receiving it.

{¶ 26} Following the presentation of the state's case, the trial court granted Smith's Crim.R. 29 motion for acquittal as to Count 1 of the indictment, aggravated murder, in violation of R.C. 2903.01(A), but denied it as to the remaining counts.

{¶ 27} Smith offered two witnesses to testify on his behalf. Victor Parker, who was being held in the county jail at the time of the trial, testified that in the week prior he ran into Lee who used to supply him with pills, while in the "bullpen"—an area in the county jail. According to Parker, Lee asked him if "Toon" was being held on his floor. (Toon is Smith's nickname.) Parker told him that he did not know Toon but asked if Toon was a codefendant in his case. Lee then told him that "he really [is] the fall guy." He further disclosed that Toon was not with him during the robbery—"he's just the fall guy."

{¶ 28} On cross-examination, Parker acknowledged that Toon confronted him after the hearing that he was talking about him and that, upon being confronted by Toon, he then shared what Lee said.

{¶ 29} Smith also offered the testimony of his investigator, John Kassay. Kassay testified as to photos that he took of Smith's right hand, evidencing a deformity in his index finger. Smith offered the photos into evidence.

{¶ 30} On cross-examination, Kassay testified that in police training the firearm instruction includes learning to shoot with one's inferior hand.

5

*State v. Smith*, 2013 WL 658161, at *1-4 (Ohio Ct. App. February 21, 2013).

## II. Procedural Background

### A. State Conviction

On December 29, 2011, a Cuyahoga County Grand Jury indicted Smith on two unspecified aggravated murder charges, Ohio Rev. Code 2903.01(A) & (B), two aggravated burglary charges, R.C. 2911.11(A)(1) & (B), two aggravated robbery charges, R.C. 2911.01(A)(1) & (3), four kidnapping charges, R.C. 2905.01(A)(2), and a charge of having weapons under a disability, R.C. 2923.13(A)(2). Doc. 11-1, pp. 36-49. With the exception of the weapons charge, the charges carried a prior conviction specification, two firearm specifications, and a repeat violent offender specification. *Id.*

Smith, through counsel, pleaded not guilty to the charges. Doc. 11-1, p. 50. On March 19, 2012, Smith, through counsel, waived his right to a jury trial on the following: having weapons under a disability, all repeat violent offender specifications, and all prior conviction specifications. Doc. 11-1, p. 51. Accordingly, the charge and specifications were tried to the bench. The case proceeded to trial.

After the state presented its case, the trial court dismissed one of the aggravated murder charges, R.C. 2903.01(A). Doc. 11-1, p. 52. The court merged the kidnapping offenses and charged the jury on the remaining aggravated murder charge and the lesser included offense. *Id.*

On March 26, 2012, the jury found Smith guilty of the lesser-included murder offense, both counts of aggravated burglary, and the kidnapping offense. Doc. 11-1, pp. 54-55. The jury found him not guilty on both aggravated robbery counts and all the firearm specifications in the indictment. *Id.* The trial court found him guilty of the repeat violent offender specifications, prior conviction specifications and having a weapon under a disability. Doc. 11-1, p. 56. The trial court sentenced Smith to fifteen years to life in prison for murder, merged the aggravated

burglary counts and sentenced Smith to ten years, another ten years for kidnapping, and three years for having a weapon under a disability, to be served consecutively, for an aggregate prison sentence of thirty-five years to life.  Doc. 11-1, p. 56.

   **B. Direct Appeal**

On April 26, 2012, Smith, through new counsel, timely appealed to the Eighth District Court of Appeals.  Doc. 11-1, p. 58.  In his brief, he presented five assignments of error:

1. The trial court erred by denying the appellant's motion to suppress the appellant's in-court identification by Ebony Johnson and Faith Smedley.

2. The appellant's due process right to being found guilty by a jury unanimously was violated when the jury found him guilty of two counts of murder pursuant to R.C. 2903.02(A) and 2903.02(B) on the same verdict form, and two counts of aggravated burglary pursuant to R.C. 2911.11(A)(1) and R.C. 2911.11 (A)(2) on the same verdict form.

3. The appellant's convictions were against the manifest weight of the evidence.

4. The trial court erred by sentencing the appellant to a disproportionate sentence compared to similarly situated offenders.

5. The trial court erred by sentencing the appellant to consecutive sentences.

Doc. 11-1, p. 60.

On February 21, 2013, the Ohio Court of Appeals affirmed all Smith's convictions except for the second aggravated burglary conviction, which it vacated.  Doc. 11-1, pp. 6-35; *Smith*, 2013 WL 658161, *12.  The Ohio Court of Appeals affirmed Smith's sentences as to each count but vacated the trial court's order that the sentences be served consecutively.  *Id*.  The state Court of Appeals remanded Smith's case to the trial court to consider whether consecutive sentences were appropriate, and, if so, to enter the proper findings on the record.  *Id*.

On March 5, 2013, Smith, *pro se*, filed an application for en banc consideration pursuant to Ohio App. R. 26(A).  Doc. 11-1, p. 119.  On March 12, 2013, the Ohio Court of Appeals denied his application as untimely.  Doc. 11-1, p. 124.

### C. Ohio Supreme Court Appeal

On March 29, 2013, Smith, through new counsel, timely appealed to the Ohio Supreme Court.  Doc. 11-1, p. 125.  He presented two assignments of error:

> 1.  A trial court violates a defendant's right to a unanimous verdict when it asks the jury to return a single verdict that corresponds to multiple counts in an indictment.
>
> 2.  When jury instructions limit the State's theory of a defendant's mens rea for murder under R.C. 2903.02(A) or (B), a court commits plain error by submitting a verdict form to the jury that allows the jury to convict based upon multiple theories of the defendant's mens rea.

Doc. 11-1, p. 129.  On June 5, 2013, the Ohio Supreme Court declined to accept jurisdiction of Smith's appeal pursuant to Ohio S.Ct. Prac. R. 7.08(B)(4).  Doc. 11-1, p. 174.

### D. Motion for New Trial

On March 18, 2013, Smith, *pro se*, filed a Motion for a New Trial in the trial court.  Doc. 11-1, p. 175.  The trial court dismissed Smith's motion for a new trial when it resentenced Smith pursuant to the Ohio Court of Appeals' remand order.  *State v. Smith*, 2014 WL 5499114, *1 (Ohio Ct. App. Oct. 30, 2014).

### E. Resentencing and Second Appeal

Pursuant to the Ohio Court of Appeals' February 21, 2013, remand order, the trial court resentenced Smith on April 15, 2013.  Doc. 11-1, pp. 4-5.  The trial court made the required findings and again imposed consecutive sentences.  *Id.*

On November 1, 2013, Smith, *pro se*, filed a notice of appeal and a motion for a delayed appeal.  Docs. 11-1, pp. 192, 194.  The Ohio Court of Appeals granted Smith leave to file a delayed appeal of the trial court's April 15, 2013 decision.  Doc. 11-1, p. 208.  Smith, through counsel, raised one assignment of error:

> 1. The trial court engaged in an abuse of discretion when it denied appellant's motion for a new trial without reasoning, analysis, or a hearing.

8

Doc. 11-1, p. 211. On July 21, 2014, the Ohio Court of Appeals ordered the parties to file supplemental briefs to address the trial court's imposition of a three-year sentence on a firearm specification. Doc. 1-1, p. 233. In response, Smith raised this additional assignment of error:

> 2. The trial court erred in sentencing appellant on a three-year firearm specification under R.C. 2941.145 when appellant had been acquitted of the same by a jury.

Doc. 11-1, p. 235. The state conceded that the trial court's three-year firearm specification sentence was improper because Smith had been acquitted on the firearm specifications. Doc. 11-1, p. 250.

On October 30, 2014, the Ohio Court of Appeals determined that Smith failed to comply with Ohio Crim. R. 33 in that he did not first move the trial court for leave of court before filing his untimely motion for a new trial. Doc. 11-1, pp. 255-256. It also found that, even if Smith had complied with Rule 33, the evidence of record supported the trial court's summary dismissal of his motion for a new trial. *Id*. at 257. The state Court of Appeals also ruled that the trial court's three-year prison sentence on the firearm specification was erroneous, vacated that sentence, and remanded the matter to the trial court "to correct the sentencing journal entry to redact the sentences imposed for all firearm specifications." *Id*. at 259.

On March 3, 2015, Smith appealed to the Ohio Supreme Court; the Ohio Supreme Court declined to accept jurisdiction. *See State v. Smith*, Case No. CA-13-100588.

### F. Federal Habeas Petition

On August 4, 2014, Smith, *pro se*, filed a petition for a writ of habeas corpus. He listed the following two grounds for relief:

> **Ground One:** The trial court violated Criminal Rule 31(A) and Smith['s] right to a unanimous jury verdict when it entered convictions and sentenced him based upon a single guilty verdict that corresponded to[] two separate counts in the indictment. Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution. By doing so, the jury was not required to unanimously agree on whether Smith committed each offense, and Smith was convicted by a patchwork verdict.

9

>**Ground Two**: In this case, the jury was specifically instructed that it could only find Smith guilty if it agreed on a single mens rea theory.  The court instructed that it had to find Smith guilty under either R.C. 2903.02(A) or R.C. 2903(B), which narrowed the theories under which Smith could be convicted.  As a result, the jury was limited to a unanimous finding under R.C. 2903.02(A) or R.C. 2903.02(B).  But the verdict form contradicts the instructions, []it stated that the jury found Smith guilty in violation of 2903.02(A) and 2903.02(B).  Accordingly, this issue is distinguishable from both Schad and Gardner, which held that the instructions had already limited the jury to a finding [of] guilt based upon single mens rea theory.
>
>As a result of the verdict form, the State no longer had to prove each element of the offense of conviction, instead, the form allowed a patchwork theory for finding Smith's mens rea, resulting in a Due Process violation.

Doc. 1, pp. 6, 8.  On January 26, 2015, Respondent filed a Return of Writ.  Doc. 11.  Respondent argues that both Smith's grounds are procedurally defaulted, not cognizable, and fail on the merits.  Doc. 11, pp. 22-30.

## III. Law

### A. Standard of Review under AEDPA

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"), apply to Smith's habeas petition because he filed it after the effective date of AEDPA.  28 U.S.C. § 2254; *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).  Under AEDPA, a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006).  "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  *Daniels v. United States*, 532 U.S. 374, 381 (2001).  Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts.  *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006).  Failure to exhaust applies when state remedies are "still available at the time of the federal petition."  *Id.* at 806

10

(quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)).  In contrast, when state court remedies are no longer available, procedural default rather than exhaustion applies.  *Williams*, 460 F.3d at 806.

**Exhaustion.**  A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court.  28 U.S.C. § 2254(b)(1)(A).  A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action.  28 U.S.C. § 2254(b), (c); *Anderson v. Harless*, 459 U.S. 4, 6  (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)) ("[f]ederal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts").  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  In order to satisfy the fair presentation requirement, a habeas petitioner must present both the factual and legal underpinnings of his claims to the state courts.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  This means that the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law.  *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

**Procedural Default.**  Procedural default may occur in two ways.  *Williams*, 460 F.3d at 806.  First, a petitioner procedurally defaults a claim if he fails "to comply with state procedural rules in presenting his claim to the appropriate state court." *Id*.  In *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986), the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to petitioner's failure to

comply with a state procedural rule: (1) whether there is a state procedural rule applicable to petitioner's claim and whether petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim and (4) whether the petitioner can demonstrate cause for his failure to follow the rule and that he was actually prejudiced by the alleged constitutional error. *See also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is technically satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson,* 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams,* 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman,* 501 U.S. at 750.

### IV. Claim Analysis

Smith sets forth two grounds for relief in his petition. Doc. 1, pp. 6, 8.  Respondent argues that both of Smith's grounds are procedurally defaulted.  Doc. 11, pp. 22-27.  Respondent also argues that Smith's grounds are not cognizable and fail on the merits.  Doc. 11, pp. 28-30.  For the reasons that follow, the undersigned concludes that Smith's grounds are procedurally defaulted.

Both Grounds One and Two are based on the instructions given to the jury and the verdict forms presented to the jury.  With respect to these claims, the Ohio Court of Appeals explained,

> {¶ 43} In his second assignment of error, Smith argues that his due process rights were violated by virtue of two verdict forms presented to the jury. He argues that the verdict forms did not match the instructions given by the judge and that the forms improperly merged multiple offenses and presented them in a single charge, thereby raising an issue of jury unanimity.
>
> {¶ 44} Initially, we note that Smith never objected to the jury instructions or verdict forms despite given the opportunity to do so. He therefore has waived all but plain error. An error constitutes plain error if it is obvious and affects a substantial right. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002–Ohio 2126, 767 N.E.2d 216, ¶ 108. Plain error exists only where it is clear that the verdict would have been otherwise but for the error. *State v. Skatzes*, 104 Ohio St.3d, 2004–Ohio–6391, 104 Ohio St.3d 195, 819 N.E.2d 215, ¶ 52. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Phillips*, 74 Ohio St.3d 72, 83, 656 N.E.2d 643 (1995).
>
> A. Murder Verdict Form
>
> {¶ 45} We turn first to the verdict form for Count 2—lesser-included offense of aggravated murder as charged in Count 2 of the indictment. The form states the following under the heading "Verdict":
>
>> We, the Jury in this case being duly empaneled and sworn, do find the Defendant, Taunee Smith, (*) _____ of Murder in violation of § 2903.02(A) and (B) of the Ohio Revised Code, a Lesser Included Offense of Aggravated Murder as charged in count and [sic] Two of the Indictment.
>
> {¶ 46} Below this paragraph, contained the following instruction:
>
>> (*) INSERT IN INK: "GUILTY" or "NOT GUILTY"
>
> {¶ 47} Within the blank space, the jury wrote "GUILTY." The form was signed by all twelve jurors.

13

{¶ 48} In its charge to the jury, the trial court stated in pertinent part the following:

> What is the lesser offense? This is an alleged violation of 2903.02(A) and/or (B). If you find the State failed to prove beyond a reasonable doubt all the essential elements of aggravated murder, then your verdict must be not guilty of that offense. In that event or if you're unable to unanimously agree, you will continue your deliberations to decide whether the State has proven beyond a reasonable doubt all of the essential elements of the lesser included offense of murder.
>
> Before you can find the defendant guilty of murder, you must find beyond a reasonable doubt that on or about the 29th day of August, 2011, and in Cuyahoga County, Ohio, the defendant, A, purposely caused the death of DeJohn Dammons or—this is again disjunctive or the alternative—caused the death of DeJohn Dammons as a proximate result of committing or attempting to commit aggravated burglary and/or aggravated robbery.

{¶ 49} The written jury instructions provided to the jury also charged on the lesser-included offense with the use of the phrase "and/or." The verdict form, however, solely stated "and."

{¶ 50} Smith argues that the instructions and the verdict form deprived him of a[] unanimous verdict because "there is no telling if some of the jurors found him guilty of murder pursuant to R.C. 2903.02(A) and if some of the jurors found him guilty of murder pursuant to R.C. 2903.02(B)." He argues that the verdict form requires reversal and entitles him to a new trial. We disagree.

{¶ 51} Both sections of the statute carry the same penalty and constitute the offense of murder. R.C. 2903.02(A) states: "No person shall purposely cause the death of another * * *." R.C. 2903 .02(B) states: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *."

{¶ 52} In support of his argument, Smith relies on the Ninth District's decision in *State v. Ward*, 9th Dist. No. 09CA009720, 2011–Ohio–518, where the court found plain error based on the trial court's failure to sever an aggravated robbery count into two counts where the state's case focused on the prosecution of several distinct acts. We find *Ward* distinguishable from the instant case. Indeed, even Smith acknowledges that *Ward* involves a single murder and single aggravated burglary. Thus, the confusion that the Ninth District found in *Ward* regarding several distinct offenses presented within a single charge simply does not exist in this case. *Id*. at ¶ 12.

{¶ 53} Conversely, the Fifth District addressed this very same issue and found no plain error. *See State v. Collins*, 5th Dist. No.2003–CA–0073, 2005–Ohio–1642. Like the instant case, the jury was presented with a single verdict form for the charges relating to violations of R.C. 2903.02(A) and 2903.02(B)—both charges supporting a single count of murder. The jury returned a guilty verdict that did not specify guilty or not guilty of

murder under R.C. 2903.02(A) or 2903.02(B). Collins argued on appeal that he was denied his right to a unanimous verdict because it was not clear if the jury unanimously agreed to the theory of culpable conduct supporting the guilty verdict for murder. *Id*. In rejecting Collins's argument, the Fifth District relied on the United States Supreme Court's decision in *Schad v. Arizona*, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991), noting the following:

> In *Schad*, the defendant was convicted of first-degree murder after the prosecution advanced theories of premeditated murder and felony murder. The jury was not instructed to unanimously find defendant guilty based on one of the proposed theories of guilt. The *Schad* court found that different mental states of moral and practical equivalence (premeditated and felony murder) may serve as alternative means to satisfy the mens rea element for the single offense of murder, without infringing upon the constitutional rights of the defendant.
>
> The *Schad* court noted: "We have never suggested that in returning general verdicts in [cases proposing multiple theories] the jurors should be required to agree upon a single means of commission, any more than the indictments were required to specify one alone. In these cases, as in litigation generally, 'different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.' " *Id*. at 631–632, 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555, quoting *McKoy v. N. Carolina* (1990), 494 U.S. 433, 449, 110 S.Ct. 1227, 108 L.Ed.2d 369 (1990) (Blackmun, J., concurring).

*Id*. at ¶ 157–158.

{¶ 54} The Ohio Supreme Court has likewise applied the reasoning of *Schad*, rejecting a defendant's claim that the right to a[] unanimous verdict includes a right to a[] unanimous theory of culpable conduct supporting that verdict. *See Skatzes*, 104 Ohio St.3d 195, 2004–Ohio–6391, 819 N.E.2d 215, ¶ 53–54.

{¶ 55} We further note that the jury was instructed several times that it must unanimously agree as to each count and to consider each count separately. Under such circumstances, Ohio courts have consistently held that the jury is presumed to have reached a[] unanimous verdict. *See, e.g., State v. Bell*, 112 Ohio App.3d 473, 679 N.E.2d 44 (3d Dist.1996); *State v. Luks*, 8th Dist. No. 89869, 2008–Ohio–3974; *State v. Shafer*, 8th Dist. No. 79758, 2002–Ohio–6632; *State v. Hunter*, 2d Dist. No. 11853, 1991 Ohio App. LEXIS 626, 1991 WL 19402 (Feb. 12, 1991). Notably, in addition to all 12 jurors signing their names on the verdict form, all 12 jurors raised their hands upon being polled as to their finding of guilty on the murder charge. And while the record contains sufficient evidence to support either lesser-included offense, we note that the jury's verdict finding Smith guilty of a separate count of aggravated burglary, coupled with the undisputed evidence that DeJohn died from a bullet fired during the course of the burglary, dispels any fear of the jury being confused over the charge and its guilty verdict of murder.

{¶ 56} Accordingly, we find no plain error with respect to the murder conviction.

B. Verdict Form for Two Counts of Aggravated Burglary

{¶ 57} Smith next challenges the trial court's use of a single verdict form for convicting him of two separate counts of aggravated burglary, violations of R.C. 2911.11(A)(1) and (A)(2). Unlike the murder verdict form used to cover a single count of murder, this verdict form essentially "merged" two separate counts into a single verdict form, forcing the jury to make a single determination for two separate counts.

{¶ 58} While it is obvious that the trial court, as well as the attorneys, believed that the two counts would merge as allied offenses if the jury found Smith guilty under each of them, a merger of the offenses is only permitted after the jury renders a separate verdict on each count. *See* Crim.R. 31. Nonetheless, we do not find plain error as it relates to Count 4, a violation of R.C. 2911.11(A). Here, the record contains a written question from the jury to the trial judge specifically related to this verdict form, asking the following question:

> Counts 4 & 5 merged creates a problem for us, the jury. We don't find the Defendant guilty of the Firearm Specifications. Counts 4 & 5 combined, we find that the offender "DID" or is "Guilty" of Count 4, but NOT GUILTY of Count 5. Can we separate Counts 4 and 5?

{¶ 59} With the agreement of [] both the state and defense, the trial judge responded to the question as follows:

> 4 & 5 are under both possible theories either/or (in the disjunctive).
>
> * * * criminal offense, to wit: Theft, R.C. 2913.02(A)(1) & the offender had a deadly weapon or dangerous ordnance, to wit: firearm on or about his person or under his control
>
> [OR]
>
> * * * Theft, R.C. 2913.02(A)(1), & the offender recklessly inflicted, or attempted to inflict physical harm on DeJohn Dammons.

{¶ 60} While this instruction may have been permissible if the jury was considering a single count, the same does not hold true when the jury was presented with two separate counts of the indictment on one verdict form. Any concern as to whether the jury unanimously agreed as to Count 4 is eliminated by virtue of the jury's question to the trial judge. Conversely, however, it is clear that Smith should have been acquitted of Count 5 and that the jury would have returned a not guilty verdict as to this count if presented with a separate verdict form. Accordingly, we uphold the conviction as it relates to Count 4 and vacate the conviction as it relates to Count 5.

{¶ 61} The second assignment of error is overruled in part and sustained in part.

*Smith*, 2013 WL 658161, at *6-10.

Smith does not dispute that he never objected to the jury instructions or verdict forms at trial. When the Ohio Court of Appeals, citing Smith's failure to object, applied plain error review, it invoked a procedural bar—Ohio's contemporaneous-objection rule. *Awkal v. Mitchell*, 613 F.3d 629, 648-649 (6th Cir. 2010) ("This court has held that [Ohio's] contemporaneous-objection rule is an adequate and independent state ground barring federal habeas review[,]" citing *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Lundren v. Mitchell*, 440 F.3d 754 (6th Cir. 2006)). A district court may not entertain a habeas petition when the state court applies a procedural bar declining to address a petitioner's claims and the procedural bar "is independent of the federal question and adequate to support the judgment." *Id*. at 648 (quoting *Coleman*, 501 U.S. at 729). A state court's plain-error review of a procedurally defaulted claim for failure to object at trial is no exception to this rule. *Id*. at 648-649.

Applying the *Maupin* factors to this case, the undersigned finds that Ohio's contemporaneous objection rule is a state procedural rule applicable to Smith's claims, he failed to comply with that rule, and the Ohio Court of Appeals enforced the procedural rule when it applied plain error review. 785 F.2d at 138; *see also Durr v. McLaren*, 2015 WL 5101751, at *2 (6th Cir. Aug. 28, 2015) (first two prongs for procedural default are met when the petitioner failed to object at trial and the state court applied plain error review). As noted, Ohio's contemporaneous objection rule is an adequate and independent state ground barring federal habeas review. *Id*.; *Awkal*, 613 F.3d at 648-649. That the Ohio Court of Appeals analyzed Smith's claims under plain error review does not save these claims from procedural default.[3] *Id*. (citing *Lundgren*, 440 F.3d at 765). And Smith does not allege, let alone demonstrate, cause for

---

[3] The *Lundgren* Court explained, "Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." 440 F.3d at 765 (citing *Scott v. Mitchell*, 209 F.3d 854, 866-867 (6th Cir. 2000)).

17

his failure to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.  His Petition makes no mention of his failure to object at trial and he did not file a Traverse.  He has not alleged, nor is it apparent, that he has suffered a fundamental miscarriage of justice if his claims are not considered by this Court.  See *Coleman*, 501 U.S. at 750.  Accordingly, Smith cannot overcome the procedural bar and he has defaulted both his federal habeas grounds.

## V. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Petitioner's Habeas Petition be **DISMISSED** because he has procedurally defaulted both his grounds for relief.

Dated: December 23, 2015

_____
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).